**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MASSACHUSETTS**

**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>ANA M. DELGADO,<br><br>               Debtor | Chapter 11<br>Case No. 11-19249-FJB |

**MEMORANDUM OF DECISION ON**
**MOTION FOR DETERMINATION OF EXTENT OF SECURED CLAIM**

The debtor, Ana Delgado ("the Debtor") has moved for a determination of the extent of the

secured claim of a secured creditor, Lehman Brothers Holdings, Inc. ("Lehman"), on real estate owned

by the Debtor at 120 Regent Street, Boston, Massachusetts (the "Property"). The Property is a six-unit

owner-occupied apartment building in the Roxbury section of Boston. Each unit has three or four

bedrooms. In order to value Lehman's interest in the Property, the Court held an evidentiary hearing,

and each party submitted an affidavit by a real estate expert with an opinion of value and an appraisal

report.

The Court accepted each appraiser as a qualified expert, and each was cross-examined. Their

opinions of value diverged widely. The Debtor's appraiser valued the Property at $315,720, Lehman's at

$520,000. The appraisers agreed that the highest and best use of the Property was as residential

apartments. Each appraiser relied on two approaches to reach his or her opinion of value:  the

comparable sales approach and the income approach.

As to the comparable sales approach, the Debtor's appraiser relied on three comparable

properties that had sold recently in Roxbury or its environs, but the appraiser relied most heavily on the

sale of 72 Devon Street. The other properties had sold for what the appraiser felt was too high a value,

because they were superior to the Property. 72 Devon Street sold for $52.75 per square foot (psf), but

the appraiser reduced the value of the Property to $40 psf without meaningful explanation.  Lehman's appraiser was critical of the Debtor's appraisal report because (among other reasons) it failed to provide an adjustment grid and relied on a single comparable sale that was in fact vacant at the time of the sale. Lehman's appraiser, on the other hand, used five comparable sales and provided a grid that detailed the adjustments attributable to a number of specified factors that were then quantified in determining a final comparable value.  The Lehman appraiser then made a $25,000 downward adjustment to her valuation of the Property because one rental unit required significant construction to make it rentable. Her range of value using this approach was $510,000 to $540,000.

As to the income approach, the Debtor's appraiser considered three comparable apartment buildings in the area and concluded that the average rental values after adjustment were between $1400 and $1700 per unit per month.  After deducting expenses and applying a capitalization rate, the appraiser opined that the value was $593,000.  Again, the Lehman appraiser was critical of the Debtor's appraisal report because the Debtor's report considered a property with one-bedroom apartments as a comparable.  Lehman's appraiser considered six comparable buildings in its analysis, all with 3- or 4-bedroom units.  After her analysis and the same $25,000 construction adjustment, Lehman's expert opined that the value of the Property was $520,000.

I agree with the Lehman appraiser's determination of value.  The Debtor's appraiser attributed more weight to the sales approach in determining final value because, he said, "it provided the best 'as is' value" as opposed to an "as completed" value.  But the Lehman appraiser took that into account with her construction adjustment.  Moreover, the Debtor's appraiser did not explain satisfactorily the reason for choosing the sales approach and fully excluding the much higher income-approach value.  The Lehman appraiser considered both approaches and found they confirmed each other as they were in the same general amount.

2

Based on the foregoing, I conclude that the value of the Property is $520,000.  This alone does not fully determine the extent of Lehman's secured claim.  A claim is a secured claim to the extent of the value of the creditor's interest in the estate's interest in the property securing the claim.  11 U.S.C. § 506(a).  The parties have not addressed either the amount of Lehman's debt or the extent of encumbrances senior to Lehman's.  The Debtor's schedules list municipal liens for taxes and water and sewer charges totalling approximately $12,200.  The Court will therefore limit the order on the present motion to a declaration of the value of the property. If there is a dispute about the remaining issues in determining the amount of Lehman's secured claim, they can be litigated at confirmation or upon a separate motion.

Date:  March 20, 2012

_____
Frank J. Bailey
United States Bankruptcy Judge